IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

KEVIN TERRANCE DAVIS                                                                                  PLAINTIFF

v.                                                                                                         No. 4:08CV85-A-D

CHRISTOPHER EPPS, ET AL.                                                                      DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Kevin Terrance Davis, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. Davis alleges that the defendants violated the Eighth Amendment prohibition against cruel and unusual punishment by failing to provide him with adequate medical care. The defendants have filed a motion for summary judgment. Although Davis has requested and received an extension of the deadline to respond to the motion, he has not done so, and the deadline for response has expired. The matter is ripe for resolution. The defendants' motion for summary judgment will be granted and judgment entered for the defendants.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Undisputed Material Facts**

On March 17, 2008, Davis was seen in the Emergency Department for treatment of numerous stab wounds. On that occasion, Dr. Dominick noted the presence of multiple areas of lacerations to Davis' forehead, left wrist, chest and right arm. A 3cm laceration was present to his forehead, and superficial lacerations were noted over his chest. There was also a 3cm laceration to his left wrist and 2 lacerations to the back of Davis' right arm, one 2cm in diameter and the other 3cm in diameter. All of Davis' lacerations were sutured using 3.0 Ethalon suture. (50000023, 50000024).

After being treated in the Emergency Department, Davis was admitted to the infirmary. There, Dr. Trinca ordered Vicodin every 4 hours as needed for pain, Ibuprofen 600 mg every 6 hours as needed for pain, and Tylenol 325 mg, 2 tablets every 4 hours as needed for pain. Shortly after Davis' admission to the infirmary, he reported to the nurse that he was feeling better. No active bleeding was noted. (50000025, 50000031).

Davis' lab work, obtained on March 18, 2008, indicated an elevated liver enzyme. Dr. Trinca then ordered a hepatitis profile, which was obtained on March 19, 2008. Davis' lab results were negative for hepatitis A and B – but positive for the hepatitis C virus. (50000035, 50000026 and 50000262).

On March 28, 2008, Davis returned to the clinic to have his sutures removed. His temperature was 98º, and his blood pressure was 134/88. On physical assessment, there was no sign of infection. Davis received counseling on the hepatitis C virus, including information regarding transmission, signs and symptoms, and complications. He received the hepatitis A and B vaccines, and was to follow up in the clinic in one week's time. (50000064, 50000105).

On May 10, 2008, Davis completed a sick call request to be seen by a specialist for his

hepatitis C conditions. On May 14, 2008, an order was written for him to receive the second in his series of hepatitis A and B vaccines. Davis, however, refused his injections. (50000063, 50000101 and 50000103).

On May 16, 2008, Davis completed a sick call request for a specialist in hepatitis C, because the doctors were not "conveying" on treating him properly. He repeated his request on May 27, 2008, and June 1, 2008. (50000097, 50000098 and 50000329).

On July 10, 2008, Dr. Lehman examined Davis and noted that he claimed to have contracted hepatitis C during a stabbing on March 17, 2008 and blood work obtained on March 19, 2008, indicated the presence of the hepatitis C virus. Davis admitted that he had a history of I.V. drug abuse with cocaine, prior to his incarceration 17 years ago. I.V. drug use is the major risk factor for the hepatitis C infection. Dr. Lehman explained to Davis that his lab results would not be positive within 2 days of exposure, and that he had carried the hepatitis C virus for "quite some time" prior to the stabbing. Davis became upset with Dr. Lehman, and threatened to kill him. (50000062, 50000093 and 50000259).

On July 24, 2008, Davis' lab work was repeated. Although his AST level was still slightly elevated at 55, normal range, 14-50, however, his other liver enzymes were within normal limits. (50000258).

On August 8, 2008, Davis presented for a mental health evaluation, requesting that his mental class be updated because of his depression. He noted that he took Thorazine 100mg, but was requesting Prozac for depression. He requested that his medical class be changed because of his complaints of back pain, so that he didn't have to "go to the field." (50000295). In August 2008, Davis completed a sick call request to have a liver biopsy performed to determine what stage of

fibrosis or cirrhosis was present. (50000091).

On September 9, 2008, Davis was seen in the chronic care clinic to monitor the status of his hepatitis C infection. On physical assessment, his lungs were clear, his heart was regular, and no edema, or deformities were noted. No complications were present, and Davis voiced no complaints except to request a special diet. It was explained to Davis that no special diet was offered for hepatitis C. He did not, however, accept this explanation. (50000285).

On November 25, 2008, Davis was evaluated because of the concerns he expressed regarding treatment for hepatitis C and hypertension. He was advised that he did not need treatment for hypertension. His blood pressure was recorded as 133/84. The risks and potential complications of hepatitis C were discussed with Davis, and he was encouraged to have additional lab work to monitor the status of his disease. Davis, however, refused to have blood drawn. (50000061, 50000088 and 50000326).

On December 16, 2008, Davis completed a sick call request for a problem with his wrist, that he believed started when he was stabbed on March 17, 2008. He also reported that he had pain in his back since 2000. He was prescribed Prednisone 10mg twice a day for 7 days, to decrease to 5mg twice a day for 7 days, and Indocin 50mg one three times a day, with meals. (50000086).

On January 9, 2009, Davis received his hepatitis A and B vaccines. (50000327). He was evaluated by Missy M. LeFlore, a mental health professional, on January 27, 2009. Davis reported that he was having flashbacks of the incident when he was stabbed. Ms. LeFlore's assessment was post traumatic stress disorder with mild depression. (50000278).

Davis returned on February 26, 2009. Dr. Kim Nagel noted that Davis did not want to be on medication, or to be followed by a mental health professional. His file was to be closed at his

request, with no further follow up. (50000281). Additional bloodwork obtained in April 2009, did not reflect a significant elevation of Davis' liver enzymes.

## The Plaintiff's Claims

Davis claims that he was denied medical treatment in violation of the Eighth Amendment prohibition against cruel and unusual punishment. He seeks relief under 42 U.S.C. § 1983. Davis argues that he received improper wound care which led to his infection with the hepatitis C virus, and that he has not received appropriate medical follow-up for his hepatitis C infection, or an appropriate diet. He also claims that he has not been given appropriate mental health counseling for the emotional problems connected with his hepatitis C diagnosis.

## Legal Standard for a Claim of Denial of Medical Treatment

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial

risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). Finally, a prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

## Discussion

A review of the plaintiff's medical records shows that he has received appropriate treatment, counseling, and monitoring since he was diagnosed with hepatitis C. The medical records show that Davis received counseling on the symptoms and complications of his hepatitis C infection. He also received vaccinations for hepatitis A and B. In addition, since Davis' diagnosis, he has not presented complaints or symptoms, such as muscle pain or jaundice, to indicate potentially serious liver problems. Appropriate blood tests have also been performed on a regular basis to monitor the level of Davis' liver enzymes and the progression of his disease. The results of the most recent blood test, which was performed in April 2009, did not disclose a significant elevation of Davis' liver enzymes. In the past, he also refused the blood work that was needed to determine the particular genotype of his hepatitis C virus and his viral load. For these reasons the physicians following Davis have not been presented with any evidence that would warrant a different course of treatment.

In addition, Davis' hepatitis C infection did not arise while he was being treated for his stab wounds. The stabbing occurred on March 17, 2008, and the next day he underwent a blood test that revealed an elevated liver enzyme. As a result of that finding, another blood test was performed on

March 19, 2008, and it was positive for the presence of the hepatitis C virus. Davis thus argues that after he was stabbed on March 17, 2008, he acquired a hepatitis C infection through the medical care that he received shortly thereafter, and that the presence of the virus then became detectable in his blood within a period of no more than two days. Such a rapid seroconversion is not possible. Dr. Santos' affidavit and the accompanying document from the Centers for Disease Control show that once a person becomes infected with the hepatitis C virus, it does not seroconvert (become detectable in that person's blood through enzyme immunoassay testing) for a period of four to ten weeks. Thus, for the hepatitis C virus to have been detectable in Davis' blood on March 19, 2008, his infection must have occurred at least four weeks earlier. Two days is simply not enough time for the hepatitis C virus to progress to the point where it can be detected in the blood.

Regarding Davis' claim that his hepatitis C infection requires a special diet and vitamins, Davis is simply mistaken, and when he visited the chronic care clinic regarding his hepatitis C, the clinician told him that there is no special diet for that those infected with the hepatitis C virus.

Finally, Davis claims that he still needs and wants mental health counseling. However, after psychiatric services and medication were offered to him, he instructed his medical providers that he did not want to take psychiatric medication or to receive further mental health treatment.

Based upon the discussion above, the court holds that Kevin Terrance Davis has received adequate medical and psychiatric care. Thus, his claims regarding denial of adequate medical treatment must fail. In addition, as the plaintiff's claims against Dr. Kentrell Liddell arise out of claims of inadequate medical care, those claims fail, as well. As such, the court holds that the motion by the defendants for summary judgment will be granted and judgment entered for the defendants. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED,** this the 8th day of February, 2010.

                                                **/s/ Sharion Aycock**
                                                **U.S. DISTRICT JUDGE**